**UNITED STATES ex rel. SANTA FÉ PAC. R. CO. v. WORK, Secretary of the Interior.**

(Court of Appeals of District of Columbia. Submitted January 6, 1925. Decided February 2, 1925. Motion for Rehearing Denied February 7, 1925.)

Public lands ⬳82—Lands relinquished by railroad must be given same valuation and classification as adjoining government land at time of relinquishment.

The United States could not give land relinquished by railroad under Act Cong. April 28, 1904, a valuation and classification below that which it had placed on its own adjoining lands, under Rev. St. § 2347 (Comp. St. § 4659), and could not, after investigation subsequent to relinquishment, place different valuation thereon, since status of land selected in lieu of land relinquished under such act must be determined according to conditions existing at time of selection.

Appeal from Supreme Court of District of Columbia.

Mandamus by the United States, on the relation of the Santa Fé Pacific Railroad Company, against Hubert Work, Secretary of the Interior. From a judgment denying writ, relator appeals. Reversed and remanded.

F. W. Clements, of Washington, D. C., for appellant.

C. E. Wright, of Washington, D. C., for appellee.

Before ROBB and VAN ORSDEL, Associate Justices, and SMITH, Judge of United States Court of Customs Appeals.

VAN ORSDEL, Associate Justice. Appellant railway company appeals from a judgment of the Supreme Court of the District of Columbia, denying a writ of mandamus to compel the Secretary of the Interior to issue a patent for certain land selected by it in compliance with the Act of Congress of April 28, 1904, 33 Stat. 556.

The act, among other things, provides that appellant railroad company "may, when requested by the Secretary of the Interior so to do, relinquish or deed, as may be proper, to the United States," any sections of their land grant in New Mexico, any portion of which was and had been occupied by any settler or settlers as a home or homestead by themselves or their predecessors for more than 25 years, "and shall then be entitled to select in lieu thereof, and to have patented other sections of vacant public land of equal quality in said territory, as may be agreed upon with the Secretary of the Interior."

It appears that upon a request from the Secretary of the Interior appellant railway company, the successor of the Atlantic & Pacific Railroad Company, a Western land grant road, surrendered and relinquished to the United States title to section 33, township 15 N., range 17 W., in the state of New Mexico, which relinquishment was accepted by the government on January 27, 1911. On May 1, 1911, the railway company selected, in lieu of the lands relinquished, section 6, township 15 N., range 18 W. The lands relinquished and the lands selected lay in adjoining townships. At the time of the selection the lands selected were classified as coal lands, of the minimum value of $20 per acre. This valuation, however, is unimportant, since these lands lay within 15 miles of the railroad and could not in any event have been valued at less than $20 per acre. R. S. § 2347 (Comp. St. § 4659). It amounted, therefore, to nothing more than a designation of the land as of the quality of "coal land."

At the time the relinquishment was made, and title accepted by the government, all the lands owned by the government in township 15, being the even-numbered sections, had been withdrawn from entry and entered upon the books of the local land office as "coal lands," with a supplementary instruction to the local land officials to the effect that from time to time township maps, showing coal lands in the respective townships, containing thereon the price at which coal lands would be sold, would be furnished, and that lands, not classified and priced as "coal lands" on such maps, should be treated as restricted to entry under the general land laws. The term "classify" means the designation of the lands as "coal lands," and the act of withdrawal was such a designation. The subsequent determination of the value of the lands so withdrawn is a valuation, and not a classification, thereof. At the time the relinquishment was made, the government, therefore, had classified the lands within township 15 as coal lands in quality, and upon the acceptance of title by the government to section 33 this land ipso facto came within the same classification. In other words, the government could not well demand relinquishment of section 33 on a valuation and classification below that which it had placed upon its own adjoining lands.

The Secretary, however, after accepting title to the relinquished land, refused to approve the selection made by the railroad company until an investigation had been made of the lands relinquished, to determine

whether or not they were equal in quality and in value to the land selected. Accordingly some five years later the Secretary arrived at a valuation of the lands relinquished, classifying 320 acres of section 33 as coal lands, valued at from $20 per acre to $56 per acre, and the balance as agricultural land. The Secretary thereupon refused to pass title to the land selected.

It is settled that the status of land selected under the act of 1904 must be determined according to conditions existing at the time when the selection is made. Santa Fé Pacific R. R. Co. v. Fall, 259 U. S. 197, 42 S. Ct. 466, 66 L. Ed. 896. The quality, therefore, of the selected lands, section 6, was fixed, on the date of selection, as coal land of the minimum or statutory value of $20 per acre.

Coming now, to the obligation imposed upon the government by the aceptance of the lands relinquished, their status was likewise fixed by the act of relinquishment. "The moment that lands were relinquished at the request of the Secretary a contract was made, and the government was bound to convey to the company such vacant lands within the territory as the company should select, provided only that they were of equal quality. In theory of law the obligation was immediate when the selection was made, if it complied with the condition. It is true that the Secretary had to be satisfied upon that point, but his discretion was not arbitrary; it went only to the quality of the lands." Santa Fé Pacific R. R. Co. v. Fall, supra. In other words, were the lands relinquished and the lands selected both coal lands? They had been so classified by the government when the contract became obligatory, and the rights of the railroad company could not be suspended indefinitely to await an ex parte valuation by the government.

At the time relinquishment was made the government, by act of withdrawal, and classification upon its books as "coal lands," of all lands within the township, had temporarily, at least, fixed the status and quality of the relinquished land. The matter of designating the valuation is unimportant, since the mere designation as "coal land" established its quality of the minimum or statutory value of $20 per acre. It therefore stood in identically the same class as the selected land, section 6. The Secretary could not withhold the approval of the selection, awaiting subsequent investigation to determine whether or not his classification of section 33 would prove correct, or that the lands might prove more valuable than the valuation the statute had placed upon them. "The Secretary went beyond the powers conferred upon him by the statute when he" suspended action on the selection, to take "into account facts not known at the time of the selection." Santa Fé Pacific R. R. Co. v. Fall, supra.

If the Secretary had made a mistake in classification, it was the government's mistake, and the government must abide by the situation it had created. The contract upon relinquishment was complete; the lands relinquished and the lands selected must stand upon the status they had at that moment, and, that status being one of equal quality, no discretion remained in the Secretary.

The judgment is reversed, with costs, and the cause remanded for further proceedings not inconsistent with this opinion.