SANTA FE PACIFIC RAILROAD COMPANY *v.* WORK, SECRETARY OF THE INTERIOR.

APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 302. Argued March 18, 19, 1925.—Decided April 13, 1925.

1. The construction of a law of the United States was "drawn in question by the defendant" within the meaning of § 250, par. 6 of the Judicial Code permitting appeals to this Court from the Court of Appeals of the District of Columbia, where the Secretary of the Interior, as defendant, secured the dismissal of plaintiff's bill upon the ground that the lieu land selection in controversy was not permitted by an Act of Congress. P. 515.

2. Under the Act of June 22, 1874, providing that railroads may relinquish lands appertaining to their land grants which are found in possession of actual settlers, etc., and select an equal quantity of other lands in lieu thereof from any of the public lands "not mineral" within the limits of the grant, not otherwise appropriated

at the date of selection, " to which they shall receive title the same as though originally granted," a railroad company is not entitled to lieu-select coal land, even though coal and iron lands are not excluded from its land grant but are declared therein not to fall within the term " mineral." P. 516.

54 App. D. C. 161; 295 Fed. 982, affirmed.

APPEAL from a decree of the Court of Appeals of the District of Columbia, which affirmed a decree of the Supreme Court of the District, dismissing a bill to restrain the Secretary of the Interior from canceling a railroad lieu selection.

*Mr. F. W. Clements*, with whom *Mr. Alexander Britton* was on the brief, for appellant.

In determining what is meant by " public lands not mineral," as used in the act of June 22, 1874, that act must be construed as *in pari materia* with the granting act; and when so construed, the lands are considered as non-mineral notwithstanding the presence of valuable deposits of coal.    There is nothing in the act of 1874 limiting the selection of lands in lieu of those relinquished to other " lands equal in quantity *and value*," as said by the court below.   Congress undoubtedly had a defined policy in permitting the large transcontinental railroads to take under their grants lands containing iron or coal products.   These railroads were great undertakings opening up country practically unexplored, and coal and iron were necessary products, not only in construction, but in later maintenance of the proposed railways.   Nothing had occurred to change this policy, and the construction of the act of '74 should be in line with the constructive policy so clearly defined in the original granting acts; and surely the generosity of the companies in relinquishing that which belonged to them, in order to protect unfortunates misled, furnishes no reason for changing this policy or penalizing the companies.

The act of 1874 provided that the grantee company should receive title to the lieu selection as though originally granted. In other words, the lieu lands were to be taken in place of those surrendered, as the surrendered lands might have been taken under original grant. This left both the companies and the individual as though the provision protecting those coming after definite location had been incorporated in the original grant. Nothing could be fairer, and if this were the purpose of Congress it could not have been more clearly expressed.

The granting act of 1866 permits selection within the enlarged or indemnity belt of lands containing valuable deposits of coal where taken in lieu of agricultural lands lost within the primary or place limits of the grants. The Secretary's action in refusing to approve the Company's selection is arbitrary, in that he exceeded his power and authority in taking into consideration in determining its validity the facts with respect to the possible coal contents and the valuation of the lands in that regard.

*Mr. Harry L. Underwood,* Special Assistant to the Attorney General, with whom *Solicitor General Beck* and *Assistant Attorney General Wells* were on the brief, for the appellee.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

The bill in this case was filed by the Santa Fe Pacific Railroad Company, incorporated under an Act of Congress, against the Secretary of the Interior to enjoin him from canceling a certain selection of lieu lands, and to command him to recall the order for such cancellation and to refrain from any further action except to issue a patent therefor in accordance with the rights of the plaintiff.

42684°—25——33

By Act of Congress, July 27, 1866, 14 Stat. 292, Congress made a grant of lands in New Mexico and Arizona to the Atlantic & Pacific Railroad Company in aid of the construction of a railroad of that name. The company defaulted on its bonds, the mortgage was foreclosed, and a sale effected to the Santa Fe Pacific Railroad Company, the complainant, which became possessed of all the rights granted by the Act of July 27, 1866, to the mortgagor company. The grant of 1866 covered every alternate section of public land, not mineral, designated by odd numbers, to the amount of twenty alternate sections per mile, on each side of the railroad line, not reserved, sold, granted or otherwise appropriated, at the time that the line of the road was designated by the filing of a plat in the General Land Office. The granting act provided further that the word "mineral" when it occurred in the Act should not be held to include iron or coal.

The Act of June 22, 1874, c. 400, 18 Stat. 194, provided:

"That in the adjustment of all railroad land grants, whether made directly to any railroad company or to any State for railroad purposes, if any of the lands granted be found in the possession of an actual settler whose entry or filing has been allowed under the preemption or homestead laws of the United States subsequent to the time at which, by the decision of the land office, the right of said road was declared to have attached to such lands, the grantees, upon a proper relinquishment of the lands so entered or filed for, shall be entitled to select an equal quantity of other lands in lieu thereof from any of the public lands not mineral and within the limits of the grant not otherwise appropriated at the date of selection, to which they shall receive title the same as though originally granted. And any such entries or filings thus relieved from conflict may be perfected into complete title as if such lands had not been granted: Provided, That nothing herein contained shall in any manner be so

construed as to enlarge or extend any grant to any such railroad or to extend to lands reserved in any land grant made for railroad purposes."

Pursuant to this legislation, the Railroad Company, on December 1, 1921, filed in the proper local land office an application to select the subject of the controversy here, being a forty-acre tract, the quarter of a quarter section within the primary or place limits of the grant in Arizona, in lieu of a tract of the same area in the same limits which it had relinquished because of a homestead claim coming within the terms of the Act of 1874. The filing was accepted by the local land office, but was rejected by the Secretary of the Interior because the land applied for was embraced in a coal withdrawal. The view of the Secretary was that the Act of June 22, 1874, did not authorize the selection of coal land in lieu of the land relinquished. The argument of the Railroad Company is that as the granting Act of 1866 declared that " mineral " in that act should not include coal or iron, the same construction should be given to the same word in the Act of June 22, 1874, in so far as selections made by the appellant are concerned.

The Supreme Court of the District sustained a motion to dismiss the bill for want of equity, and this action was affirmed by the Court of Appeals.

The question whether this Court has jurisdiction of the appeal is raised on behalf of the Secretary of the Interior. We think it has under the 6th paragraph of § 250 of the Judicial Code, which permits an appeal from the Court of Appeals of the District in cases " in which the construction of any law of the United States is drawn in question by the defendant." Certainly the Secretary of the Interior, as the defendant herein, by his contention that the Act of 1874 does not permit the Railroad Company to select lieu lands which are coal lands, draws in question the construction of a law of the United States

The Act of 1874 was passed to help homestead and other settlers who were in hard case because they had established their settlement after the grant to the Railroad Company was held to have attached. The question when it did attach was for a long time doubtful and the subject of litigation. This Act of 1874 was intended to induce the railroad companies to relinquish such lands thus illegally occupied as against them by promising in lieu thereof other lands of equal area in both odd and even sections within the prescribed limits. The act applied not only to railroad grants in which the term "lands not mineral" did not exclude iron or coal lands, as in this case, but also to similar grants, of which there were several, in which the phrase "not mineral" was used in its usual sense and excluded iron and coal. E. g., see grants to Union Pacific R. R. and Central Pacific, 12 St. 489, 492, c. cxx., § 3; Joint Resolution Jan. 30, 1865, 13 Stat. 567. It would seem to be impossible, therefore, to give a meaning to the phrase "not mineral" in the Act of 1874 which should mean including coal in some cases and excluding coal in others.

More than this, the settlers who were to be aided by the Act of 1874 were those who made homestead or pre-emption filings. Coal lands were not subject to such entry or disposition. As the lands which the railroad companies were invited to relinquish could not be known coal lands, it is not to be inferred that Congress intended that the railroad companies should in compensation acquire coal lands by their lieu selections.

This construction of the Act of 1874 accords with the action of the Department of the Interior since its passage. Not until this case had the precise question been mooted so as to invoke a formal decision of the Secretary; but the record discloses that it has been the uniform practice of the General Land Office in its printed forms furnished under the act to confine such lieu selections to lands not

known to contain coal, iron or other minerals, and that railroad companies generally have acquiesced therein by furnishing proofs of the non-coal and iron character of the land selected.

It has also been insisted on behalf of the Secretary that the discretion vested in him by Congress in supervising the selection of lieu lands and in executing the laws of 1866 and 1874 is quasi judicial, and that it may not be controlled through mandamus or injunction by the Courts, unless his conclusion can be said to be capricious or arbitrary, or so unreasonable as not to be debatable. To sustain this claim, the cases of *Riverside Oil Co.* v. *Hitchcock,* 190 U. S. 316, 324; *Ness* v. *Fisher,* 223 U. S. 683, 692; *Alaska Smokeless Coal Co.* v. *Lane,* 250 U. S. 549, 555, and *Hall* v. *Payne,* 254 U. S. 343, and a number of earlier cases are cited. See *Brown* v. *Hitchock,* 173 U. S. 473, 478. It may be that the authority of these cases would require us to yield to the contention made on behalf of the Secretary in this regard. We are not, however, required to decide this point. The case against the construction of the Act of 1874 urged by the Railroad Company is so clear that we prefer to put our decision directly on the merits of that issue.

*Affirmed.*