**SANTA FE PAC. R. CO. v. ICKES, Secretary of the Interior, et al.**

**Civil Actions Nos. 23373, 23845.**

District Court of the United States for the District of Columbia.

Dec. 4, 1944.

---

Lawrence Cake, of Washington, D. C., for plaintiff.

Fowler Harper and Harry M. Edelstein, both of Washington, D. C., for defendants.

PINE, Justice.

These are motions to dismiss, which were argued together. They raise similar questions of law and can be conveniently consolidated for decision.

Plaintiff prays in each case for a judgment enjoining defendants from rejecting selections of lands filed by it on the ground that they are barred by a release filed pursuant to Sec. 321(b) of the Transportation Act of 1940, 49 U.S.C.A. § 65, and directing defendants to determine the rights of plaintiff in said selections, without regard to the release.

In Civil Action 23373 the facts alleged are briefly as follows: Plaintiff's predecessor in title acquired certain lands in New Mexico under the Act of July 27, 1866, 14 Stat. 292.[1]

By deed dated December 18, 1911, plaintiff relinquished these lands to the United States under the Act of April 28, 1904, 33 Stat. 556.[2] On August 28, 1940, it exercised its rights of selection under the Statute last named, by selecting lands in lieu of the relinquished lands, and on December 18, 1940, while the selections were still pending, filed the release above mentioned.

In Civil Action 23845 the facts alleged are briefly as follows: Plaintiff's predecessor in title acquired certain lands in Arizona under the Act of July 27, 1866, supra. By deeds dated November 27, 1916, and December 15, 1916, plaintiff relinquished these lands to the United States under the Act of June 22, 1874, 18 Stat. 194, 43 U.S.C.A. § 888.[3] On March 23, 1943, plaintiff exercised its rights of selection under the Statute last named, by selecting lands in lieu of the relinquished

---

[1] "Sec. 3. And be it further enacted, That there be, and hereby is, granted to the Atlantic and Pacific Railroad Company, its successors and assigns, for the purpose of aiding in the construction of said railroad and telegraph line to the Pacific coast, and to secure the safe and speedy transportation of the mails, troops, munitions of war, and public stores, over the route of said line of railway and its branches, every alternate section of public land, not mineral, designated by odd numbers, to the amount of twenty alternate sections per mile, on each side of said railroad line, as said company may adopt, through the Territories of the United States, and ten alternate sections of land per mile on each side of said railroad whenever it passes through any State, and whenever, on the line thereof, the United States have full title, not reserved, sold, granted, or otherwise appropriated, and free from pre-emption or other claims or rights, at the time the line of said road is designated by a plat thereof, filed in the office of the commissioner of the general land office. * * * "

[2] "That the Atlantic and Pacific Railroad Company, its successors in interest and its or their assigns, may, when requested by the Secretary of the Interior so to do, relinquish or deed, as may be proper, to the United States any section or sections of its or their lands in the Territory of New Mexico the title to which was derived by said railroad company through the Act of Congress of July twenty-seventh, eighteen hundred and sixty-six, in aid of the construction of said railroad, any portion of which section is and has been occupied by any settler or settlers as a home or homestead by themselves or their predecessors in interest for a period of not less than twenty-five years next before the passage of this Act, and shall then be entitled to select in lieu thereof, and to have patented other sections of vacant public land of equal quality in said Territory, as may be agreed upon with the Secretary of the Interior."

[3] "That in the adjustment of all railroad land grants, whether made directly to any railroad company or to any State for railroad purposes, if any of the lands granted

lands. On December 18, 1940, plaintiff filed the release above mentioned.

The release filed by plaintiff pursuant to the Transportation Act of 1940 supra, stated that it "relinquishes, remises and quitclaims to the United States of America any and all claims of whatever description to lands, interests therein, compensation or reimbursement therefor on account of lands or interests granted, claimed to have been granted, or claimed should have been granted by any act of the Congress to Santa Fe Pacific Railroad Company or to any predecessor in interest in aid of the construction of any portion of its railroad."

The Transportation Act of 1940, supra, in paragraph (a) of Section 321 thereof, makes certain concessions to carriers in the rates, fares, and charges applicable to the transportation of persons, property, and mail for the United States, and paragraph (b) thereof provides that:

"If any carrier by railroad furnishing such transportation, or any predecessor in interest, shall have received a grant of lands from the United States to aid in the construction of any part of the railroad operated by it, the provisions of law with respect to compensation for such transportation shall continue to apply to such transportation as though subsection (a) of this section had not been enacted until such carrier shall file with the Secretary of the Interior, in the form and manner prescribed by him, a release of any claim it may have against the United States to lands, interests in lands, compensation, or reimbursement on account of lands or interests in lands which have been granted, claimed to

have been granted, or which it is claimed should have been granted to such carrier or any such predecessor in interest under any grant to such carrier or such predecessor in interest as aforesaid."

The issue therefore is whether the release embraces, and thereby extinguishes, the right to select lands in lieu of relinquished lands under the Acts of 1904 and 1874, supra, respectively.

The release embraces any and all claims of whatever description to lands and interests therein granted by any Act of Congress to plaintiff or any predecessor in aid of the construction of any portion of its railroad.[4] Plaintiff's right to select lieu lands is a claim to lands, and this is not disputed. Plaintiff does contend, however, that it is not a claim to lands granted by any Act of Congress·in aid of construction; that is, that the Acts of 1904 and 1874, supra, are not granting acts in aid of construction, and therefore that such claim is not included in the release.

The Act of 1866, supra, under which plaintiff's predecessor acquired title to the lands relinquished, is concededly a granting act in aid of construction.[5] The Acts of 1904 and 1874, supra, are supplemental to, and in legal effect amendatory of, the Act of 1866, supra. They made provision for the relief of settlers who were found to be occupying the lands of the railroad company. They gave the railroad company the right to select equal quantities of lands in lieu of lands which they relinquished for the benefit of such settlers. They were measures found to be desirable by reason of unforeseen developments

---

be found in the possession of an actual settler whose entry or filing has been allowed under the preemption or homestead laws of the United States subsequent to the time at which, by the decision of the land office, the right of said road was declared to have attached to such lands, the grantees, upon a proper relinquishment of the lands so entered or filed for, shall be entitled to select an equal quantity of other lands in lieu thereof from any of the public lands not mineral and within the limits of the grant not otherwise appropriated at the date of selection, to which they shall receive title the same as though originally granted. And any such entries or filings thus relieved from conflict may be perfected into complete title as if such lands had not been granted: Provided, That nothing herein contained shall in any manner be so construed as to enlarge or extend any

grant to any such railroad or to extend to lands reserved in any land grant made for railroad purposes: And provided further, That this act shall not be construed so as in any manner to confirm or legalize any decision or ruling of the Interior Department under which lands have been certified to any railroad company when such lands have been entered by a preemption or homestead settler after the location of the line of the road and prior to the notice to the local land office of the withdrawal of such lands from market."

[4] The release excludes lands which have been patented or certified to plaintiff or any predecessor in aid of construction, and other categories of lands not material to this case.

[5] Santa Fe Pac. R. Co. v. Work, 267 U. S. 511, 45 S.Ct. 400, 69 L.Ed. 764.

arising out of the operation of the railroad land grant acts. The plaintiff itself probably was not without selfish motive in the relinquishment of its lands, which tended to prevent an exodus of established settlers along its right of way who without conscious fault found themselves without title.

As I perceive the intent of Congress, from the language of the statutes themselves, the lieu lands, when selected, were to be, so far as humanly possible, a counterpart of, and in substitution for, the original lands granted, and were to be lands granted by Congress in aid of construction, precisely as were the original lands. The Act of 1904, supra, gives the right to select public lands "of equal quality" and contemplates a substitution of section for section. The Act of 1874, supra, gives the right to select "an equal quantity of other lands in lieu thereof from any of the public lands not mineral and within the limits of the grant not otherwise appropriated at the date of selection, to which they [railroad grantees] shall receive title the same as though originally granted."

The three Acts are each a part of the same legislative scheme and purpose to grant lands in aid of construction of railroads. The subsequent Acts are not independent granting Acts without relation to any other grant, but are clearly dependent upon, and supplemental to, the grant contained in the Act of 1866, supra, and provide for grants contingent upon the relinquishment of lands granted under such Act. In other words, the Acts of 1904 and 1874, supra, are, respectively, granting Acts in aid of construction when coupled, as they must be, with the Act of 1866, supra.

■ The fact, as contended by plaintiff, that it gave a consideration, namely a deed to the lands relinquished, for the right to select others, does not make either of the Acts any less a grant. A railroad land grant is not a gift, but is a transfer of title to lands in return for the construction and operation of a railroad.[6] Nor, as urged by plaintiff, does the fact that plaintiff's rights are contractual[7] re-

move the applicable statutes from the category of granting statutes.[8]

■ Under these circumstances, I am of the opinion that these unperfected rights of plaintiff to select lieu lands are claims to lands granted by Acts of Congress to plaintiff in aid of the construction of its railroad, and are therefore within the scope of, and extinguished by, the release, which was given in pursuance of an apparent Congressional purpose to wipe the slate clean of such claims by any railroad which enjoyed the benefits of the rate concessions made by the Transportation Act of 1940.

The motion to dismiss will therefore be granted. Counsel will prepare and submit on notice order in accordance herewith.

---

6 Burke v. Southern Pac. R. Co., 234 U.S. 669, 680, 34 S.Ct. 907, 58 L.Ed. 1527.

7 Santa Fe Pac. R. Co. v. Fall, 259 U.S. 197, 42 S.Ct. 466, 66 L.Ed. 896; United States ex rel. Santa Fe Pac. R. Co. v. Work, 55 App.D.C. 206, 4 F.2d 172.

8 Burke v. Southern Pac. R. Co., supra; United States v. Northern Pac. R. Co., 1921, 256 U.S. 51, 41 S.Ct. 439, 65 L.Ed. 825; Southern Pac. Co. v. United States, 1939, 307 U.S. 393, 396, 59 S.Ct. 923, 83 L.Ed. 1363.