## BURKLEY v. UNITED STATES et al.
### No. 10236.

United States Court of Appeals
Seventh Circuit.
Nov. 10, 1950.

Paul J. Maguire, Chicago, Ill., Haskins, Maguire & Haskins, Chicago, Ill., of counsel, for appellant.

Otto Kerner, Jr., U. S. Atty., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., Anthony Scariano, Anna R. Lavin, Asst. U. S. Attys., Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and FINNEGAN and LINDLEY, Circuit Judges.

FINNEGAN, Circuit Judge.

On July 24, 1950, appellant J. A. Burkley filed his complaint in the United States District Court for the Northern District of Illinois, Eastern Division. He alleges:

1. That he is the sole owner of Freight Traffic Institute, an educational institution, having its principal office and place of business in Chicago, Illinois; that said organization has been in continuous operation since 1937, and that he has been actively associated with said institution since its inception.

2. That the Institute has for its purpose teaching and training of students in the principles of freight traffic management, and related activities in the transportation of property by rail, highway, water and air.

3. That Robert D. Beer, Edward Corcoran and R. W. Marshall, who are named defendants, are respectively the manager, chief finance officer and chief of the training section of the Chicago Regional Office of the Veterans Administration, established, maintained and operated under various statutes enacted by Congress.

4. That this is a suit involving more than $3000, arising under (United States Statute, to-wit:) 38 U.S.C.A. § 701(f) and is a case within the jurisdiction of the court under sections 1331, 2201 and 2202 of the Judicial Code, 28 U.S.C.A. and related statutes.

5. That under the provisions of 38 U.S. C.A. § 701(f), being Servicemen's Readjustment Act of 1944, Chapter 268, Public Law 346, Congress provided for vocational training for ex-servicemen at federal expense, in qualified schools for the education of said ex-servicemen of World War II. Supervision and control of the schools qualified for the acceptance of said students was vested in the Veterans Administration of the United States.

6. That after passage of the Statute, plaintiff's institution was qualified by the Chicago Regional Office of the Veterans Administration, and ex-servicemen students were thereupon accepted and trained from on or about September, 1944 and continuously thereafter up to the filing of this suit.

7. That by the terms of the aforesaid statutes, the Veterans Administration is authorized to determine "the fair and reasonable cost of tuition to be paid to qualified schools, that this determination is exclusively vested in the Veterans Administration, and is predicated, in whole or in part, upon the cost data submitted by the schools and verified by inquiry and investigation instituted and carried on by the employees of the Veterans Administration. Said cost data, as verified, is thereupon submitted to complicated accounting formulae independently evolved and applied by the Veterans

Administration in its computation of the rate of tuition due each school by reason of its acceptance, teaching and training of ex-servicemen students."

8. That on or about May 15, 1948, incidental to the renewal of the then existing contract, with the Veterans Administration, plaintiff did submit a summary of maintenance and operation costs incurred in the operation of the school from May 1, 1947 to and including April 30, 1948. "This was done at the request of the Veterans Administration for the purpose of negotiating and processing a new contract to take effect immediately after the expiration of the contract terminating with June 30, 1948." That despite diligence and cooperation of the plaintiff, the contracts covering students' training for a period varying from July 1, 1948 to March 31, 1949, inclusive, were not presented to plaintiff until January 3, 1949. These agreements marked Exhibit "A" and "B" are attached to the complaint and incorporated therein.

9. Plaintiff operated under the terms of said agreement and in full compliance therewith; that because of their execution he accepted and retained all qualified ex-servicemen who enrolled in the school from July 1, 1948 to March 31, 1949; that said enrollment amounted to not less than 90% of the entire student body. That all of the said ex-servicemen have completed their training and the Veterans Administration has paid to the plaintiff all of the tuition which accrued on account of their training under said contracts.

10. That during 1949 employees of the General Accounting Office of the United States Government investigated the books and records of the plaintiff.

11. That on or about May 17, 1950, plaintiff received notification from defendant, R. W. Marshall, in charge of the Training Facilities Section of the Veterans Administration Regional Office, to the effect that the aforesaid agreement covering tuition rates from July 1, 1948 to March 31, 1949 had been revised "in conformity with the alleged facts resulting from the aforesaid audit of the General Accounting Office," that plaintiff was requested to sign

an alleged "Supplemental Contract" the effect of which would be to reduce the tuition from July 1, 1948 to March 31, 1949.

12. That plaintiff did not sign the alleged "Supplemental Contract"; that about June 5 plaintiff was advised by defendant, Edward Corcoran, Finance Officer for the Veterans Administration Regional Office, that alleged overpayments amounted to approximately $15,000; "that in order to protect the interests of the Government" it was necessary to withhold any future payments until such time as an audit could be made indicating the total amount of alleged overpayments. Copy of this notice marked Exhibit "C" is attached to and incorporated in complaint.

13. That on May 24, 1950, the Veterans Administration executed a tuition contract with plaintiff. That with the exception of one voucher for $2935.60 it has failed or refused to pay any tuition money to plaintiff since on or about April 24, 1950, that many students were under training during said time and many are now being enrolled and trained under the 1950 contract.

14. That up to the filing of this complaint plaintiff has submitted bills for tuition in the sum of $45,000, of which sum $3856.89 is due under the terms of the agreement made with the Veterans Administration for the year 1949.

15. That the present enrollment of Freight Traffic Institute is between 500 and 600 students, not less than 85% of whom are ex-servicemen receiving training under the aforesaid statute. That plaintiff's costs of maintenance and operation amount to not *less* than $80,000 per year; that the failure of Veterans Administration to honor tuition bills places plaintiff in jeopardy because immediate receipt of the aforesaid monies is necessary to defray operational and maintenance expenses. If said monies are not promptly received plaintiff will be forced to discontinue the school's activities to his irreparable injury, and to the injury of the ex-servicemen students.

16. That the action of the defendants and each of them is arbitrary, unwarranted and without foundation in law; "that the 1948 contract which they now maintain resulted in overpayments has been completely executed on the part of the plaintiff on the one hand and the Veterans Administration on the other" that it is unlawful for the defendants and each of them to claim that monies due under subsequent contracts should be withheld by reason of unfounded claims of overpayments alleged to have been made under the 1948 agreement; that the defendants, and each of them are estopped "from asserting the merits of their contentions, with respect to the said alleged overpayments;" that the Veterans Administration has an action at law to recover said alleged overpayments under the 1948 contract, which it has not seen fit to institute.

17. Plaintiff further represents that he is ready, willing and able to deposit with this court surety bond in the sum of $15,-000, or for any other sum which this court may deem reasonable, for the protection of the United States Government's alleged interests in the aforesaid matter of overpayments, and stands ready, willing and able to defend whatever suit that the United States Government may see fit to bring in the protection of its alleged interests in the matter of so-called overpayments made under the 1948 contract."

The complaint names as defendants The United States of America; Robert D. Beer; Edward Corcoran and R. W. Marshall. Relief is prayed for in five distinct paragraphs. The prayers are:

In paragraph "A" that Edward Corcoran be temporarily and later permanently enjoined from enforcing any order, mandate or direction previously given by him having for its purpose the withholding of tuition monies due plaintiff under the terms of any contract between him and the Veterans Administration. In paragraph "B" the prayer is that Edward Corcoran be ordered to authorize payment of all bills for tuition which have been or will be presented by plaintiff to the Veterans Administration at Chicago, providing said bills are in conformity with the terms of agreements existing between plaintiff and the Veterans Administration, and that he do so forthwith.

In paragraph "C" the prayer is that Robert D. Beer and R. W. Marshall, and each of them, their assistants and employees under their control, temporarily and then permanently, be enjoined from withholding, obstructing or otherwise interfering with the payment of tuition money, now due or which will become due, on bills by plaintiff in accordance with the terms of contracts between him and the Veterans Administration.

In paragraph "D" the prayer is "that the court set the amount for surety bond having for its purpose the security of any claim which the Veterans Administration or the United States, or both, may have against the plaintiff by reason of any monies which are alleged to have been overpaid to the plaintiff as the result of his dealings or agreements with the Veterans Administration; that the court further set a final period of time for the life of said surety bond but not later than one year from the entry of this court's order."

The matter came on for hearing on plaintiff's motion for a preliminary injunction. The defendants were represented by the United States District Attorney for the Northern District of Illinois, who insisted that the action was against the United States, and the complaint stated no cause of action on which relief could be granted.

The District Court denied the motion for preliminary injunction and dismissed the complaint.

This appeal followed.

■ The contention of the plaintiff-appellant is that the cause of action here under review is not against the United States, but is directed against the employees or agents of the Government. It is claimed that their acts and omissions in withholding monies due the plaintiff, were beyond their statutory powers, but that is a mere conclusion. He relies largely upon certain language which he culls from the decision of the United States Supreme Court in Larson v. Domestic & Foreign Commerce Corporation, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628.

That was a suit by the Domestic & Foreign Commerce Corporation against the Chief Officer of the War Assets Administration. The complaint alleged that the Administrator had sold certain surplus coal to the plaintiff; that the Administrator refused to deliver the coal, but, on the contrary entered into a contract to sell it to others. The prayer was for an injunction restraining the Administrator from selling or delivering the coal to anyone other than the plaintiff. There was also a prayer for a declaration to the effect that the sale to plaintiff was valid and the sale to the second purchaser was invalid. The District Court dismissed the complaint on the ground that the suit was against the United States. The Court of Appeals for the District of Columbia reversed, 83 U.S.App. D.C. 13, 165 F.2d 235, and on certiorari granted, the Supreme Court reversed the Court of Appeals, and directed that the complaint be dismissed.

We have fully abstracted the complaint. of appellant in order to emphasize the difference between his case at bar and the situation existing in the cases upon which. he predicates his claim to relief.

■ He names the United States of America as a party defendant. In his prayer for relief he asks direct and specific relief against the Government, as set forth in our abstract of prayer for relief in paragraph "D". The record discloses that he caused process to be served upon the United States by leaving a copy with the District Attorney of the United States for the Northern District of Illinois, Eastern Division. In the cases he cites and upon which he relies: Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628; Land v. Dollar, 330 U.S. 731, 67 S.Ct. 1609, 91 L.Ed. 1209; Santa Fe R. R. Co. v. Fall, 259 U.S. 197, 42 S.Ct. 466, 66 L.Ed. 896; Sloan Shipyards v. U. S. Fleet Corp., 258 U.S. 549, 42 S.Ct. 386, 66 L.Ed. 762; and Philadelphia v. Stimson, 223 U.S. 605, 32 S.Ct. 340, 56 L.Ed. 570, the plaintiff did not name the United States as a formal defendant. In those cases no attempt was made to serve the Government itself with process and no specific relief was sought against the United States. In each and every precedent he calls to his aid, the court was obliged to

disregard the formally named defendant or defendants, and to consider the whole record, in the light of existing circumstances, to determine whether or not the United States was the real party in interest. We do not wish to be understood as holding that the mere fact that the United States is a formal defendant is decisive of the question presented by this record. We too must examine all the facts and circumstances involved in the case in order to determine whether or not this is in truth an action against the United States of America. But in our examination we are entitled to note and consider that the Government is named defendant and that specific relief against it is prayed and suggested.

■ This record discloses that since 1944, under the Servicemen's Readjustment Act, Chapter 268, Public Law 346, 38 U.S. C.A. § 701(f), which provides as follows: "§ 701(f) Any person who served in the active naval or military forces on or after September 16, 1940, and prior to the termination of hostilities in the present war, shall be entitled to vocational rehabilitation subject to the provisions and limitations of Veterans Regulation numbered 1(a) as amended, part VII, or to education or training subject to the provisions and limitations of part VIII," the appellant, as sole owner of Freight Traffic Institute, has been training ex-servicemen.

Part VIII of the Veteran's Regulations, to which reference is made in the act just cited, in paragraph 5 thereof, provides that the Administrator of the Veterans Administration, an executive agency of the Government, vested with power to control and carry said act into execution, "shall pay to the educational or training institution (including the institution offering institutional on-farm training), for each person enrolled in full time or part time course of education or training, the customary cost of tuition, and such laboratory, library, health, infirmary, and other similar fees as are customarily charged, and may pay for books, supplies, equipment, and other necessary expenses, exclusive of board, lodging, other living expenses, and travel, as are generally required for the successful pursuit and completion of the course by other students in the institution: * * *"

The contracts of appellant with the Veterans Administration have been extended and renewed from time to time. His renewal contract for the training of students for the period July 1, 1948 to and including March 31, 1949, was signed on January 3, 1949, it is Exhibit "B" attached to his complaint. That contract contains the provisions: "It is understood and agreed that the terms of this contract are subject to and will be governed by Veterans Administration Regulations issued pursuant to Public Law 346, as amended, and that any obligation assumed by the Veterans Administration under this contract is limited to the appropriated funds made available therefor."

Appellant claims that this contract for the training of students from July 1, 1948 up to and including March 31, 1949, was completely executed and that all payments due thereunder were made by the Veterans Administration.

It appears that during the early part of the year 1949 employees of the General Accounting Office of the United States Government made an investigation of the books and records of the appellant's institution.

On May 17, 1950, appellant was notified that as a consequence of the audit of his books by the General Accounting Office it had been determined that the tuition rates in the contract, Exhibit "B" should be revised downward, and he was requested to sign a supplemental contract to effectuate that result. He refused to do so, and was later notified that the audit disclosed overpayment to him by the Government in the sum of approximately $15,000. He was informed that "to protect the interests of the Government" future payments would be withheld until an audit disclosed the full amount of the overpayments.

The Act of June 10, 1921, 31 U.S.C.A. ch. 1 § 41, created the General Accounting Office, and abolished the offices of Comptroller of the Treasury and Assistant Comptroller of the Treasury and provided that

all other officers and employees of the Office of Comptroller of the Treasury, except as otherwise provided by said Act, shall be officers and employees of the General Accounting Office.

Said Act of 1921, as amended, provides: "All claims and demands whatever by the Government of the United States or against it, and all accounts whatever in which the Government of the United States is concerned, either as debtor or creditor, shall be settled and adjusted in the General Accounting Office." 31 U.S.C.A. ch. 2, § 71.

The same Act, as amended, provides, Title 31 U.S.C.A. ch. 2 § 74, that the balances certified by the General Accounting Office upon the settlement of public accounts, shall be final and conclusive upon the Executive Branch of the Government except that a revision thereof may be obtained within a year by the person, whose accounts may have been settled, or by the head of the Executive Department involved, or by any board, commission or establishment (not under the jurisdiction of the executive department) whose accounts are involved.

In the meantime, on May 24, 1950, a new tuition contract was entered into between appellant and the Veterans Administration, fixing the rates of tuition for students during the period from April 1, 1949 to some date in 1950 which is not shown. The terms and conditions of this contract do not appear in this record. However, the appellant does allege that tuition bills in the sum of $45,000 have been submitted to the Veterans Administration, and that only $2,935.60 has been paid on account of tuition for students since April 24, 1950. In the hearing before the trial court, it developed that on July 7, 1950, the sum of $20,071.85 had been certified for payment to appellant under said contract, and that an additional bill in the sum of $5,000 was being audited. On oral argument it developed that since the institution of the present suit the entire amount of outstanding tuition bills submitted, save only about $15,000, the figure considered as being the total of overpayments under contract marked Exhibit "B", has been paid by the Government.

The individual defendants named in the complaint are officers or employees of the Chicago office of the Veterans Administration. As individuals they have no interest in the contract between appellant and the executive agency of the Government by which they are employed. Yet the complainant asks that they be enjoined with the employees under their control "from withholding, obstructing or otherwise interfering with the payment of tuition monies either now due or which will become due under bills submitted by the plaintiff in accordance with the terms of agreements existing between plaintiff and the Veterans Administration."

In addition to this the court is asked to fix the amount of a surety bond, and is requested, implicitly, to determine the condition of said bond which shall have for its purpose the securing of any claim which the Government of the United States or the Veterans Administration, or both, may have against the appellant by reason of any monies which are claimed to have been overpaid to appellant as the result of his dealings with the Veterans Administration. The court is further asked to fix a period of time for not longer than one year for the life of said surety bond so that either the Government or the Veterans Administration may be compelled within said period to institute suit to determine and to recover said alleged overpayments.

In other words, plaintiff seeks to enjoin the individual defendants from making known to the disbursing officers of the United States the fact that according to the audit of the General Accounting Office, the plaintiff has been overpaid to the amount of approximately $15,000 on his tuition contracts with the United States. This is directly contrary to the statutes of the United States which, as we have pointed out, make the findings of the General Accounting Office conclusive on all Government departments.

When the prayers of the complaint at bar are thus resolved, it becomes manifest that the appellant herein is attempting, in his action, to enforce by order of the District Court, the payment by the Govern-

ment of the United States to appellant of monies which he claims to be due him by virtue of his contracts with the Veterans Administration. He is seeking to do by indirection what he cannot do directly.

The judgment of the District Court is therefore affirmed.