**June A. CYRUS, Plaintiff, Appellant,**
v.
**UNITED STATES of America,**
**Defendant, Appellee.**
**No. 5017.**

United States Court of Appeals
First Circuit.
Oct. 27, 1955.

Nathan Goldstein, Boston, Mass., Poster, Wilinsky & Goldstein, Boston, Mass., on the brief, for appellant.

John J. Cound, Atty., Washington, D. C., Warren E. Burger, Asst. Atty.

Gen., Anthony Julian, U. S. Atty., Boston, Mass., Samuel D. Slade, Washington, D. C., and James P. Lynch, Jr., Asst. U. S. Atty., Boston, Mass., on the brief, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

June A. Cyrus filed a complaint against the United States to recover the sum of $10,000, being the amount of insurance granted by the United States, pursuant to the Servicemen's Indemnity Act of 1951, 65 Stat. 33, 38 U.S.C.A. § 851 et seq., on the life of her son, Richard Thomas Alexander, who died while on active duty as a member of the Armed Forces. Alexander had not designated a beneficiary, and had neither a wife nor child. In these circumstances, the Act provided in § 3 that the indemnity should be paid to a parent, "including a stepparent, parent by adoption, or person who stood in loco parentis to the insured at any time prior to entry into the active service for a period of not less than one year", and that "Unless designated otherwise by the insured, the term 'parent' shall include only the mother and father who last bore that relationship to the insured." 38 U.S.C.A. § 852.

When the plaintiff, as the natural mother of the deceased soldier, filed her claim for the indemnity, the Veterans' Administration denied it upon a ruling that Alexander's grandmother was the last person to bear the relationship of mother to Alexander within the meaning of the Act.

■ Since the present complaint was an action against the United States, the court below had no jurisdiction of the subject matter unless the Congress has, on behalf of the United States, explicitly indicated its consent that the United States may be sued in this manner. Cf. Hospoder v. United States, 3 Cir., 1953, 209 F.2d 427. The Administrative Procedure Act, 60 Stat. 237, 5 U.S.C.A. § 1001 et seq., has nothing to do with this case. It contains no provisions purporting to deal with the subject of governmental immunity. The general language in § 10 of that Act cannot be deemed to be "an implied waiver of all governmental immunity from suit." Blackmar v. Guerre, 1952, 342 U.S. 512, 516, 72 S.Ct. 410, 412, 96 L.Ed. 534.

■ For an understanding of the scheme laid down by Congress for the processing of claims for indemnity under the various acts providing for governmental life insurance to members of the Armed Forces and veterans, it is sufficient to begin with the World War Veterans' Act of 1924, 43 Stat. 607, which was an act to consolidate and revise the laws affecting the establishment of the United States Veterans' Bureau, the administration of the War Risk Insurance Act, as amended, enacted during World War I, and the Vocational Rehabilitation Act, as amended. Section 19 of this World War Veterans' Act provided, 43 Stat. 612: "that in the event of disagreement as to claim under a contract of insurance between the bureau [i. e., the United States Veterans' Bureau, now the Veterans' Administration] and any beneficiary or beneficiaries thereunder an action on the claim may be brought against the United States either in the Supreme Court of the District of Columbia or in the district court of the United States in and for the district in which such beneficiaries or any one of them resides * * *." The only "contract of insurance" which the Congress had in mind in using this phrase in § 19 was the United States Government life insurance provided for in detail in the consolidated §§ 300–307 of the Act. It was provided therein that, upon application to the Bureau by a member of the Armed Forces, the United States should grant insurance, in certain amounts, against death or total permanent disability, "upon the payment of the premiums as hereinafter provided." It was also provided that veterans of World War I could convert their War Risk term insurance into ordinary life, twenty-payment life, endowment, and other usual forms of insur-

ance. The United States Government life insurance policy to be issued in such cases was described as a "contract" in § 301 of the Act, as indeed it was, the only difference from a private contract of insurance being that the application was made to the United States, the premium was paid to the United States, and the United States issued the policy of insurance.

The aforesaid provision of § 19 of the World War Veterans' Act of 1924, specifically authorizing suits against the United States on claims under contracts of United States Government life insurance, has remained on the statute books and is now to be found, without essential change, in 38 U.S.C.A. § 445.

On October 8, 1940, Congress enacted the National Service Life Insurance Act of 1940, 54 Stat. 1008. It was under this Act that the United States issued contracts of insurance during World War II to members of the Armed Forces who made application therefor and made payment of the premiums as therein specified. In order to make clear its intention to authorize suits against the United States on claims arising under these contracts of insurance, it was provided in § 617 of the National Service Life Insurance Act of 1940, 54 Stat. 1014, that, in the event of a disagreement as to a claim arising under such policies of insurance, "suit may be brought in the same manner and subject to the same conditions and limitations as are applicable to United States Government (converted) life insurance under the provisions of section 19" of the World War Veterans' Act of 1924, as amended. This provision of § 617 now appears in 38 U.S.C.A. § 817.

On October 17, 1940, Congress passed an act for the further amendment of the World War Veterans' Act of 1924, as amended, which provided as follows, 54 Stat. 1197:

"Sec. 11. Notwithstanding any other provisions of law, except as provided in section 19 of the World War Veterans' Act, 1924, as amended, and in section 817 of the National Service Life Insurance Act of 1940 [probably § 617 was meant], the decisions of the Administrator of Veterans' Affairs on any question of law or fact concerning a claim for benefits or payments under this or any other Act administered by the Veterans' Administration shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decisions."

This provision remains in the law and now appears as 38 U.S.C.A. § 11a–2.

Finally, on April 25, 1951, Congress enacted the Servicemen's Indemnity Act of 1951, 65 Stat. 33, which was described in the preamble as an act to authorize the payment by the Administrator of Veterans' Affairs of a "gratuitous indemnity" to survivors of members of the Armed Forces who die in active service. This Act provided, in § 2, that each member of the Armed Forces "shall be automatically insured by the United States, without cost to such person, against death in such service in the principal amount of $10,000." Nowhere in the Act is the gratuitous indemnity thus provided for described as a "contract of insurance", nor did the Act contain any provision, such as was found in the National Service Life Insurance Act of 1940 and in the World War Veterans' Act of 1924, authorizing suits against the United States on claims for the gratuitous indemnity.

Such being the state of the statute law, we think the district court was clearly right in entering judgment dismissing the present complaint for lack of jurisdiction, as was held in United States v. Houston, 6 Cir., 1954, 216 F.2d 440.

The judgment of the district court is affirmed.