485 F.2d 67
 3 Envtl. L. Rep. 20,807
 ASSOCIATION OF NORTHWEST STEELHEADERS (NORTHWEST
STEELHEADERS COUNCIL OF TROUT UNLIMITED) et al.,
Plaintiffs-Appellants,
Department of Fisheries et al., Intervenor Plaintiffs-Appellants,
v.
UNITED STATES ARMY CORPS OF ENGINEERS et al., Defendants-Appellees,
Inland Empire Waterways Association, Amicus Curiae.
ASSOCIATION OF NORTHWEST STEELHEADERS (NORTHWEST
STEELHEADERS COUNCIL OF TROUT UNLIMITED) et al., Plaintiffs,
Department of Fisheries & Department of Game, State of
Washington, Intervenor Plaintiff-Appellant,
Arthur Solomon, Jr., et al., Intervenor Plaintiffs,
v.
UNITED STATES ARMY CORPS OF ENGINEERS et al., Defendants-Appellees,
Inland Empire Waterways Association, Amicus Curiae.
 Nos. 72-1428, 72-1430.
 United States Court of Appeals,
Ninth Circuit.
 Sept. 21, 1973.
 
 Lawrence Cary Smith (argued), of Smith, Smith, & Smith, Spokane, Wash., Samuel W. Fancher, Tacoma, Wash., for plaintiffs-appellants.
 Dean C. Smith, U. S. Atty. (argued), Robert M. Sweeney, Asst. U. S. Atty., Spokane, Wash., Cameron Sherwood, of Sherwood & Tugman, Walla Walla, Wash., for defendants-appellees.
 Before DUNIWAY and HUFSTEDLER, Circuit Judges, and KELLEHER,* District Judge.
 PER CURIAM:
 
 
 1
 Plaintiffs initiated this action seeking to enjoin further dam construction on the lower Snake River[1] and to compel defendants to comply with certain federal laws,[2] all of which allegedly imposed on defendants statutory duties which they are allegedly ignoring in the construction of the dams. Shortly after the complaint was filed ten individuals intervened seeking the same relief as the original plaintiffs. The State of Washington, through its Departments of Game and Fisheries, also intervened but sought only a declaration of the duties of the defendants under the provisions of the Fish and Wildlife Coordination Act, 16 U.S.C. Sec. 661, et seq. which deals with the effect of dam construction on fish and wildlife. Amended complaints were filed by both the plaintiffs and the intervenors and the defendants moved to dismiss those complaints on several grounds, among which was the contention that the complaints were actually suits against the United States which is not subject to suit absent its consent, and since no consent had been given, sovereign immunity barred the action. Thereafter, the State of Washington moved for summary judgment. Oral argument on both the motion to dismiss and the motion for summary judgment were heard together.
 
 
 2
 Citing Dugan v. Rank, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963), for the proposition that-
 
 
 3
 "The general rule is that a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' Land v. Dollar, 330 U.S. 731, 738 [, 67 S.Ct. 1009, 91 L.Ed. 1209] (1947), or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act'."
 
 
 4
 the trial court found lack of jurisdiction and dismissed the action.
 
 
 5
 The trial court distinguished the cases cited by the appellants on their facts, finding that the Corps of Engineers was acting pursuant to the direct mandate of Congress while in the appellants' cases the involved agency was given discretionary power and the claims were that this power was being abused.
 
 
 6
 On appeal appellants assert that all necessary facts have been alleged to bring them within the recognized exceptions to the doctrine of sovereign immunity. As was recognized in State of Washington v. Udall, 417 F.2d 1310 (9th Cir. 1969), when the essence of an appellant's case on the merits requires determination of whether federal officials have exceeded their authority or have exercised that authority in a void manner, the action falls within the exceptions to sovereign immunity. Clearly, the allegations of the appellants require such resolution and, therefore, fall within the exceptions.
 
 
 7
 However, as the appellee urges, when the relief sought would work an intolerable burden on governmental functions, outweighing any consideration of private harm, the action must fail notwithstanding allegations falling within the recognized exceptions to sovereign immunity. State of Washington v. Udall, supra, at 1318 (interpreting Larson v. Domestic and Foreign Commerce Corp., 337 U.S. 682, 691 n. 11, 69 S.Ct. 1457, 93 L.Ed. 514 (1949).
 
 
 8
 The trial court's finding of lack of jurisdiction seems premised upon the prayer of plaintiffs-appellants and the individual intervening plaintiffs-appellants for enjoining further construction of Lower Granite Dam. However, the intervening plaintiff-appellant State of Washington requested only a declaration as to the meaning and application of the Fish and Wildlife Coordination Act. Moreover, the trial court's Memorandum Opinion suggests only inferentially that the dismissal of the plaintiffs-appellants and the individual intervening plaintiffs-appellants was based upon a finding that the relief they sought would work an intolerable burden on governmental functions which outweighed any private harm. Such a suggested finding will not support affirmance premised upon Larson and State of Washington v. Udall. Rather, an explicit finding that the relief sought, as alleged, will work an intolerable burden on governmental functions and that such burden outweighs the private harm, as alleged, is required.
 
 
 9
 In State of Washington v. Udall, this Court reversed the dismissal of the State's complaint which was based upon a finding of sovereign immunity per Dugan, upon balancing the relative equities and burdens as alleged. However, on the record in this case in which, on appeal, the appellee asserts that the environmental impact statement required by the National Environmental Policy Act of 1970, 42 U.S.C. Secs. 4321-4347, has been filed and the fish and wildlife mitigation and enhancement plan required by the Fish and Wildlife Coordination Act, 16 U.S.C. Sec. 661, et seq., is being prepared, if not already completed, and in view of requirements of Larson and State of Washington v. Udall, it is appropriate that the case be remanded.
 
 
 10
 Of course, the dismissal might have been premised upon lack of standing. However, the record refutes that possibility, for assuming that sovereign immunity is no bar to the action, each of the appellants sufficiently set forth allegations that the interests they seek to protect are within the zone interests to be protected by the statutes pursuant to which they seek to bring this action, Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970), that they, themselves, are among the injured, Sierra Club v. Morton, 405 U.S. 727, 735, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), and that the dispute is presented in an adversary context and in a form historically viewed as capable of judicial resolution, Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Thus, again assuming no sovereign immunity bar, the Administrative Procedure Act, 5 U.S.C. Sec. 701 et seq., provides a basis upon which appellees' actions may be reviewed. Clearly, no such bar exists as to the intervening plaintiff-appellant State of Washington, and just as clearly the allegations of the plaintiffs-appellants and the individual plaintiffs-appellants fall within the general exceptions to sovereign immunity.
 
 
 11
 Accordingly, upon remand the trial court should determine whether each prayer of relief sought by the plaintiffs-appellants and the individual plaintiffs-appellants would constitute such an intolerable burden to governmental functions, when weighed against private harm, that dismissal of that prayer and underlying claims is proper. In considering this balance the trial court, in its discretion, may determine that such a finding is more appropriate after resolution of the merits rather than being based on the allegations of the complaint. Additionally, the trial court should determine whether all the appellants' causes of action based upon alleged non-compliance of the National Environmental Policy Act of 1970 and the Fish and Wildlife Coordination Act are moot in view of the appellees' assertions on appeal. Such other action as is necessary should also be taken.
 
 
 12
 Reversed and remanded for further proceedings in accordance with this opinion.
 
 
 
 *
 Honorable Robert J. Kelleher, United States District Judge, Central District of California
 
 
 [1]
 Dam construction is designed to provide slack water navigation from the mouth of the Columbia River to Lewiston, Idaho,- Clarkston, Washington area, flood control and additional power sources. The first of the dams, Ice Harbor Dam, was begun in January 1956 and completed in January, 1962. The second dam, Lower Monumental Dam, was commenced in 1961 and completed in January 1969. Little Goose Dam, the third dam, was begun in 1963 and completed in February 1970. Lower Granite Dam was begun in June of 1970, though a preliminary cofferdam was begun in July 1965; completion is scheduled for 1975. A fifth dam, designated Asotin, has been authorized but apparently plans for its construction have been "shelved" for the time being
 
 
 [2]
 Appellants allege that the appellees have exceeded their statutory authority or have exercised their authority in a constitutionally void manner by:
 a. Failing to consider the irreparable injury and destruction of the environment in connection with the Lower Granite Dam pursuant to the Wildlife Coordination Act of 1958, 16 U.S.C. Sec. 661, et seq., which requires the defendants to consult with the State of Washington and other agencies to determine whether or not mitigation of injury is feasible and to present mitigation plans to Congress;
 b. Failing to evaluate projects partially completed (viewing, we believe, the five dams as one project) and to advise Congress of the evaluation pursuant to the National Environmental Policy Act of 1969, effective 1970;
 c. Exceeding the authority given by Congress in authorizing the construction of the Lower Granite Dam by having twice moved the authorized site and increased the height of the pool level without additional authority of Congress, which in turn necessitated the construction of dikes around the cities of Lewiston, Idaho, and Clarkston, Washington, in excess of those originally authorized and partially filling the existing river bed;
 d. Illegally relocating the Camas Prairie Railroad, necessitated by the construction of the Lower Granite Dam, resulting in the filling of thousands and thousands of yards of rock and gravel along the north river bank, drastically changing the existing environment and causing irreparable injury to the wildlife without complying with the provisions of the National Environmental Policy Act of 1969 and the Wildlife Coordination Act of 1958; and
 e. Failing to comply with the provisions of the Water Pollution Control Act of 1967, 33 U.S.C. Sec. 1151, et seq. Additionally, violations of other, more minor, acts are alleged.