# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of | No. 78988-1-I |
| GILLIAN K. HOPSON, f/k/a Gillian K. Ben-Artzi, | DIVISION ONE |
| Respondent, | UNPUBLISHED OPINION |
| and | |
| ERIC BEN-ARTZI, | |
| Respondent, | |
| KILGOUR WILLIAMS GROUP; COLIN KILGOUR; and DANIEL WILLIAMS, | |
| Intervenor-Appellants, | |
| LABATON SUCHAROW LLP, | |
| Intervenor-Respondent. | FILED: December 9, 2019 |

APPELWICK, C.J. — Hopson and Ben-Artzi dissolved their marriage in 2014. At the time, Ben-Artzi had a whistleblower claim pending before the SEC. The dissolution decree awarded each of them 50 percent of the net proceeds of any whistleblower award. Ben-Artzi later entered into contracts with Kilgour, Williams, and KWG, which had provided him with expert services in the whistleblower action. The contracts increased KWG's expert services fee and required Ben-Artzi to pay Kilgour and Williams a portion of his award. The SEC awarded Ben-Artzi $8,250,000. Hopson then moved to create a child support trust for their children,

funded by Ben-Artzi's award share. The trial court ordered the creation of the trust, and requested that the SEC forward payments to Hopson and the court registry. Kilgour, Williams, and KWG argue that the trial court violated CR 60 and the federal government's sovereign immunity. We affirm.

FACTS

In September 2006, Gillian Hopson[1] and Eric Ben-Artzi were married in New York. In March 2013, they separated while living in Washington. Hopson served Ben-Artzi with a petition for dissolution on March 30, 2013.

In April 2013, while the dissolution proceedings were pending, Ben-Artzi, acting as the president of Model Risk LLC, entered into a written agreement with Kilgour Williams Group (KWG). Under the agreement, KWG agreed to provide Ben-Artzi expert services in support of his whistleblower claim against his former employer, Deutsche Bank AG. The agreement also required Model Risk to pay KWG a fee equal to three percent "of the gross value of any Award paid to The Claim as granted by the [Securities and Exchange Commission (SEC)]'s Office."

Labaton Sucharow, LLP (Labaton) represented Ben-Artzi in the whistleblower action. Ben-Artzi agreed to pay Labaton 18 percent of any proceeds awarded to him by the SEC.

On May 21, 2014, the trial court issued a decree dissolving Hopson and Ben-Artzi's marriage. In the decree, it ordered Ben-Artzi and his attorneys to "keep the wife apprised and advised of the developments and progress of

---

[1] The dissolution decree changed Gillian's last name from Ben-Artiz to Hopson.

proceeds . . . or any other such monetary dispensation . . . in any action, . . . including . . . the whistleblower matter before the SEC and its derivative or related proceedings." It stated that "[t]his shall occur not less than quarterly each year, or within 10 days of entry of an important ruling, order, award, or judgment, etc."

The trial court awarded "50% of the net proceeds" of "the whistleblower matter before the [SEC]" to both Hopson and Ben-Artzi. In its findings of fact and conclusions of law, it provided:

> Direct litigation costs shall be paid from the gross proceeds before calculation of the net community proceeds, and shall include attorney fees for [Ben-Artzi's] attorneys Thad Guyer and Jordan Thomas; fees paid to experts who testified or were identified in discovery as testifying experts; court reporter expenses for transcription necessary in the litigation; and any other expenses directly related to the litigation and agreed by the parties.

It further found that Ben-Artzi "should be ordered to pay indirect litigation expenses from his portion of the litigation proceeds described above, not the wife's portion." It stated that his obligations "shall include . . . fees for [KWG]."

The trial court also ordered Hopson and Ben-Artzi to pay for their children's "reasonable and necessary post-secondary educational expenses." Specifically, it ordered Hopson to pay 25 percent and Ben-Artzi to pay 75 percent of such expenses. Ben-Artzi appealed the dissolution decree, findings of fact and conclusions of law, order of child support, and parenting plan. In re Marriage of Ben-Artzi, No. 72063-5-I, slip. op. at 1 (Wash Ct. App. Aug. 10, 2015) (unpublished), http://www.courts.wa.gov/opinions/pdf/720635.pdf. This court affirmed each order in August 2015. Id.

As the whistleblower proceeding progressed, Ben-Artzi and KWG entered into a new agreement. On August 1, 2014, KWG's fee was amended from three to five percent, and Ben-Artzi agreed to sell, assign, and transfer KWG's work product to Colin Kilgour and Daniel Williams in order for them to submit their own claim to the SEC. In exchange, Kilgour and Williams agreed to pay Ben-Artzi 60 percent of the gross amount of all monetary awards resulting from their claim. Hopson was not a party to this agreement, and the record does not indicate that she was advised of the agreement.

In June 2015, while Ben-Artzi's appeal of the dissolution decree was pending, Hopson moved for a temporary restraining order prohibiting Ben-Artzi from disposing of the proceeds in any way. She filed the motion after learning that the SEC had ordered Deutsche Bank to pay a $55 million fine. Citing Ben-Artzi's history of not complying with court orders, Hopson asserted that "that pattern of behavior is predictive of his compliance related to any SEC . . . proceeds he obtains without proper disbursal by the Court."

Later that month, the trial court found that it had the authority to direct Ben-Artzi "to deposit sums anticipated to be received in to this Court's registry pending disposition of his appeal." It entered an order restraining and enjoining him from

> transferring, or removing, encumbering, concealing, taking possession of or in any way disposing of any net proceeds received from any entity pursuant to both the whistle blower complaint with the SEC and the OSHA wrongful termination suit . . . except in so far as necessary to transmit the funds to the registry of the Whatcom County Superior Court, to be held by the clerk of court pending motion and hearing and any ruling of the Court of Appeals.

4

The SEC issued a preliminary determination of the whistleblower claim in July 2016, recommending an $8,250,000 award for Ben-Artzi.[2] In August 2016, the Financial Times published an article Ben-Artzi wrote renouncing his award. Eric Ben-Artzi, We Must Protect Shareholders from Executive Wrongdoing, FIN. TIMES, August 21, 2016. In the article, Ben-Artzi explained that he was disappointed that the SEC imposed a fine on Deutsche Bank's shareholders instead of the managers responsible for "'inflating the value of its massive portfolio of credit derivatives.'" He observed that his lawyers and Hopson had a claim on a portion of the award, and requested that his share "'be given to Deutsche and its stakeholders.'"

That same month, Kilgour and Williams entered into another agreement with Ben-Artzi after learning that he had publicly renounced his award. They felt that his "recent media campaign" impaired their likelihood of successfully appealing the SEC's denial of their application for an award. As a result, they requested that he direct the SEC to pay them $2,500,000 of his award share. "[I]n addition to the contracted amount payable to [KWG]," Ben-Artzi agreed to direct the SEC to make the following payments out of his award share: (1) $247,500 to KWG, under the April 2013 contract, (2) $1,250,000 to Kilgour, and (3) $1,250,000 to Williams.

---

[2] Kilgour and Williams note that the SEC recommended against granting them an award. On November 8, 2019 the United States Court of Appeals for the Second Circuit denied their appeal. Kilgour, v. Sec. and Exch. Comm'n, ___ F.3d ___, 2019 WL 5849495, at *10 (2nd Cir. Nov. 8, 2019)

5

The SEC issued its final determination on November 30, 2017, awarding Ben-Artzi "15% of the monetary sanctions collected in the Covered Action, for a payout of more than $8,000,000."[3] It also made note of the orders in Hopson and Ben-Artzi's dissolution proceedings, stating,

> [I]n an order entered on May 21, 2014, and later affirmed by the Washington State Court of Appeals, the Divorce Court decreed how the proceeds from any award to [Ben-Artzi] are to be distributed among various interested parties, including [Ben-Artzi's] former spouse, [Ben-Artzi's] former counsel, and Claimants #3 and #4 for their firm's services as an expert.

Two weeks later, Hopson moved for an order directing the SEC to deposit the funds awarded to Ben-Artzi into the court registry for disbursement, less the 18 percent owed to Labaton under its representation agreement. She argued that she was "entitled to her 50% share of the remaining SEC award monies as community property." A hearing on the motion was set for December 29, 2017.

On December 26, Kilgour, Williams, and KWG moved to continue the hearing and intervene. They argued that Hopson's claim to 50 percent of the remaining award "is a violation of the terms of the Findings and the Decree in this case, and fails to protect equitable lienholders protected by both the Findings and the Decree as it attempts to make an award of gross proceeds." (Emphasis added.) Neither their motion nor Kilgour's declaration attached to the motion

---

[3] Kilgour, Williams, and KWG note that the SEC denied their claims, and they appealed. They state that, as of December 21, 2018, their appeal was awaiting oral argument.

mentioned their August 2016 agreement with Ben-Artzi.[4] The trial court granted the motion to intervene, but denied the motion for a continuance.[5]

On January 3, 2018, the trial court granted Hopson's motion. It directed the SEC to deposit "any and all monies awarded under the Order to . . . Eric Ben-Artzi, less 18% to be paid to Labaton Sucharow, into the Whatcom County Superior Court registry." It also stated that, upon receipt of the funds into the registry, "Petitioner and Respondent and other Joined third parties may each petition the Court by separate motion for release or disbursement of funds consistent with the allocations previously ordered by this Court." The SEC's Office of the General Counsel responded to the trial court's order on January 8, 2018. It stated that the SEC could not transfer the funds to the court's registry until the "successful resolution of any appeals that are filed challenging the underlying order that granted the award."

A few days later, Hopson filed another motion. She sought to update the consolidated judgment entered on December 16, 2015,[6] disburse the funds to be received from the SEC, and fund a support and education trust for her children with Ben-Artzi. She requested that the SEC award be disbursed as follows: (1)

---

[4] Of their three agreements with Ben-Artzi, Kilgour attached only the 2013 and 2014 fee agreements to his declaration.

[5] The trial court also allowed Labaton to intervene.

[6] The trial court had entered an order finding that Ben-Artzi owed Hopson $450,982.88 in "total outstanding judgments, past due child support, past due maintenance, attorney fees, discovery sanctions, appellate attorney fees and costs, and other recovery amounts." It also found that he owed her $40,922.80 in interest on those amounts.

$4,335,185.60 to Hopson, (2) $2,429,814.40 to Ben-Artzi, and (3) $929,187.00 to a support and education trust for the benefit of their children.

Hopson asked that the trust be funded by Ben-Artzi's "separate property share of the SEC proceeds." In a declaration attached to her motion, she stated, "Given the persistent and extreme intransigence exhibited by Eric throughout this case, this Court should order such a trust be created and funded by Eric in an amount sufficient to guarantee all future child support due and post-secondary education." As an alternative, she asked that the trial court order Ben-Artzi to place "the equivalent of two years' of child support in the court's registry pursuant to RCW 26.18.150."

In response, Kilgour, Williams, KWG, and Labaton argued that Hopson's request for the establishment of an educational trust should have been raised at trial. They stated, "[T]he court should concern itself with established current debts and not future, or hypothetical debts." And, they addressed the August 2016 agreement between Kilgour, Williams, and Ben-Artzi. Pursuant to the agreement, they requested that Kilgour and Williams each be paid $1,250,000.00 out of Ben-Artzi's share of the net proceeds. Kilgour, Williams, and KWG also asserted that the action implicated sovereign immunity principles. Hopson argued in response that the trial court lacked jurisdiction to rule on Ben-Artzi's contractual obligations to KWG. And, she contended that none of Kilgour, Williams, and KWG's claimed fees should be deducted from the SEC award.

Ben-Artzi also argued that the trial court lacked jurisdiction to decide whether Kilgour, Williams, and KWG were entitled to the amounts they claimed. Alternatively, he asserted that Kilgour and Williams lacked contractual rights to be paid $1,250,000 each under the August 2016 agreement. As to Hopson's motion, he stated,

> As I stated in the previous hearing, I am eager for Gillian to receive the funds as determined by previous court orders as soon as possible. I hope the court will then quickly lift the sanctions imposed against me, so that I can safely re-enter the [United States] and see my sons. However, I ask once again that my taxes be taken into account. As reiterate[d] my request for withholding Israeli income taxes of 50%, a request that was ignored by the court in the previous hearing. As an alternative, I ask the court to withhold 30% [United States] Federal taxes in accordance with IRS Publication 515.

At a hearing on Hopson's motion, Ben-Artzi opposed the trial court "awarding anything" to Kilgour, Williams, and KWG. When asked whether he opposed the establishment of the trust, he stated,

> No, I do not, Your Honor, so long as it doesn't, I understand that if there is insufficient funds for taxes then if I do not, if I do not oppose this then it will be more difficult for me to negotiate with a tax authority. So I think I might have to formally object.

On August 24, 2018, the trial court issued its findings and order on Hopson's motion. It found that "[t]he parties agree that 18% of the award should be paid directly to Mr. Ben-Artzi's attorneys in the SEC matter, Labaton Sucharow, LLP." And, it clarified that the direct litigation costs to be deducted from the award in calculating the net proceeds include KWG's three percent fee under the 2013 contract. It explained,

> The Intervenors' fees were 3% of any SEC award when this Court entered its Findings and Decree. Entry of the Findings and Decree

9

was a final resolution of the parties' shares of any SEC award. While Ben-Artzi was free to change his agreement with [KWG], he did not have authority to change or pledge Ms. Hopson's interest, which was to be determined based on a net award of 79%. Any amounts owing to [KWG] under subsequent agreements are the responsibility of Mr. Ben-Artzi. Determination of any fees Mr. Ben-Artzi may owe to [KWG] is, of course, outside this Court's jurisdiction.

(Emphasis added.)

The trial court awarded Hopson 50 percent of the net proceeds of the SEC award, $3,258,750.00, plus $696,262.38 for prior judgments and assessments, and $828,186.25 as trustee for a child support and postsecondary educational expenses trust account. It also awarded Ben-Artzi 50 percent of the net proceeds, less the additional amounts awarded to Hopson, for a total of award of $1,734,301.37.

The trial court stated its basis for creating the trust:

The Court finds the arrangements set forth below in paragraph 3.3, to fund child support and post-secondary educational expenses, are reasonable and necessary to assure the adequate support of the children. This finding is based on all the circumstances of this case, including Respondent, Eric Ben-Artzi's agreement to this arrangement; the lack of proximity and contact between the parents; and the history of nonpayment of support throughout the pendency of the case. RCW 26.18.030; Bryant v. Bryant, 68 Wn.2d 97[, 411 P.2d 428] (1966).

Last, the trial court requested that the SEC forward the amounts due to Hopson to the court registry. It explained, "As this is a final order of this Court, this order remains subject to modification only in the event that the SEC award is not paid as described in Section 2 of this order."

Kilgour, Williams, and KWG appeal. Ben-Artzi does not appeal.

10

DISCUSSION

The appellants[7] make two arguments. First, they argue that the trial court violated CR 60 by creating a trust that modified the dissolution decree. Second, they argue that the trial court violated sovereign immunity by requesting that the SEC forward payments to the court registry.

## I. A Motion Under CR 60 Was Not Required

The appellants argue first that the trial court's order creating the trust modified the dissolution decree in violation of CR 60. They note that the 2014 decree did not create a trust for child support and educational expenses. Thus, they contend that the order creating the trust "effected a modification of the decree because it reduced Dr. Ben-Artzi's share of the net proceeds of the whistleblower award by $828,186.25 to fund a trust for the future support and education of the children."

The appellants rely on In re Marriage of Bobbitt, 135 Wn. App. 8, 144 P.3d 306 (2006). There, Esser and Bobbitt's dissolution decree awarded Bobbitt a property in Yakima "as his separate property." Id. at 14. It also assigned him the property's mortgage liability. Id. After Esser found out that Bobbitt had failed to make mortgage payments for four months, she started making the payments herself. Id. When an offer to purchase the property was made, she moved for permission to sell it and place the proceeds in her attorney's trust account. Id. at 14-15. The trust was meant to facilitate the payment of her existing judgments

---

[7] Throughout the remainder of the opinion, we refer to Kilgour, Williams, and KWG collectively as "the appellants."

against Bobbitt, including back child support. Id. at 15. The trial court granted her motion. Id.

On appeal, Bobbitt argued that the trial court abused its discretion or acted beyond its jurisdiction in authorizing Esser to sell the property. Id. This court agreed. Id. at 18. It noted, "It has been the rule in Washington that the trial court does not have jurisdiction to order the sale of the parties' assets without their consent because there is no statutory grant of such power to a trial court." Id. at 15. While trial courts have ordered sales in some cases, this court explained that "the trial court's consideration of the issue occurred during the pendency of the case or at the conclusion of the trial, not after a full and final division of the property had been made." Id. at 15-16.

And, "[n]ot only did the decree award the Yakima property entirely to Bobbitt, but it also appear[ed] to allocate any sale proceeds for community tax debt and for a debt owed to Dave Nelson." Id. at 18. Thus, this court held that the trial court erred in allowing Esser to sell Bobbitt's property "to enhance her ability to collect her judgments against Bobbitt." Id. It stated, "Because the time for appeal had run on the property division, her remedy was to file a Civil Rule 60 motion to vacate the decree or enforce any judgments by process of law." Id.

Here, the trial court did not modify the property division in the dissolution decree. It still awarded both Hopson and Ben-Artzi 50 percent of the net proceeds of the SEC award. It also ordered that a separate amount, $696,262.38, of Ben-Artzi's share be awarded to Hopson to satisfy his outstanding judgments, including back child support. The appellants do not assign error to that determination.

12

And, unlike <u>Bobbitt</u>, the trial court did not allow Hopson to sell Ben-Artzi's award share to collect on her judgments against him. Rather, it ordered the creation of a trust for future child support funded by Ben-Artzi's share, and appointed Hopson as trustee. It ordered that $828,186.25 of the funds awarded to Ben-Artzi be placed in the trust. The trust is meant to facilitate payment of Ben-Artzi's future child support obligations in the face of his history of not paying child support, his move to Israel, and his failure to pay his outstanding obligations from the property division in the decree.

Hopson did not ask the trial court to modify the dissolution decree. Nor did the court purport to modify the decree. In the decree, the trial court had determined that Hopson is responsible for 25 percent and Ben-Artzi is responsible for 75 percent "of a child's reasonable and necessary post-secondary educational expenses." It also approved the final order of child support requiring Ben-Artzi to pay $1,778.00 per month. The court utilized these provisions in creating the trust:

> $828,186.25 of the funds awarded to Respondent, Eric Ben-Artzi above, shall be placed in a professionally managed investment account, with Ms. Hopson or her designee to serve as trustee.
>
> a. $211,582 of these funds represent child support that will be due and payable in the amount of $1,778.00 per month, until each child reaches the age of 18, and those funds shall be disbursed to Ms. Hopson on a monthly basis.
>
> b. $616,604.25 shall be retained in trust and applied to fund 75% of the direct costs of post-secondary education for the two children of the marriage. Direct costs include tuition, school fees, and reasonable living expenses for each child. Petitioner, Gillian Hopson, shall pay the remaining 25% of these costs, as provided in the decree.

Rather than a modification of the decree, Hopson sought enforcement of the decree in the form of a judgment for back child support, including attorney fees. And, in light of Ben-Artzi's failure to pay and his move to Israel, she asked the court to create a support and educational trust for their children, funded by Ben-Artzi's award share. In the order creating the trust, the court cited RCW 26.18.030 as support for the trust arrangement. Chapter 26.18 RCW governs child support enforcement. This citation suggests that the court understood the trust as a mechanism to enforce Ben-Artzi's child support obligations, not as a modification to them.

Hopson relies on Abel v. Abel, 47 Wn.2d 816, 821, 289 P.2d 724 (1955), to support that the trial court had authority to create the trust. In Abel, the trial court established a trust in a third person for the benefit of the parties' children. Id. at 820. It did so at the conclusion of a dissolution proceeding, not in an order on a post-decree motion. Id. The State Supreme Court affirmed. Id. at 824. It held that, under former RCW 26.08.110 (1949),[8]

> in the exercise of its discretion in providing for the welfare of minor children, [the trial court] has authority to impound property of the parties in a third person trustee for the benefit of the children, in such amounts and upon such terms and conditions as the court shall approve and deem reasonable.

Id. at 821. It also noted that one of the parties or a third person may be named as trustee. Id.

---

[8] The provisions governing child support and child support enforcement are now governed by chapter 26.09 RCW and chapter 26.18 RCW, respectively.

14

Here, the trial court found the creation of the trust reasonable and necessary based on "Ben-Artzi's agreement to this arrangement; the lack of proximity and contact between the parents; and the history of nonpayment of support throughout the pendency of the case." But, it did so in an order on a post-decree motion, not in the dissolution decree. Abel is silent as to whether the trial court has authority to create such a trust in post-decree order.

The trial court in which the prior support order was entered "retains continuing jurisdiction under [chapter 26.18 RCW] until all duties of either support or maintenance, or both, of the obligor, including arrearages, have been satisfied." RCW 26.18.040(3). And, chapter 26.18 RCW is to be "liberally construed to assure that all dependent children are adequately supported." RCW 26.18.030(3). These provisions suggest that a trial court has authority to create a trust to facilitate the enforcement of a child support order. A proceeding to enforce a child support obligation may be commenced by filing a motion in an existing action. RCW 26.18.040(1)(b). Chapter 26.18 RCW does not require a party to bring a CR 60(b) motion in order to enforce another party's child support obligations. Any argument to the contrary is without merit.

Even if we were to construe the trust's creation as a modification to the dissolution decree, the trust modified Ben-Artzi's child support obligations, not the property division. Under RCW 26.09.170(1), Hopson was not required to file a CR 60(b) motion to modify the child support order incorporated in the decree. Any claim to the contrary lacks merit. RCW 26.09.170(1) provides that "the provisions of any decree respecting maintenance or support may be modified . . . except as

15

otherwise provided in this section, only upon a showing of a substantial change in circumstances." Washington courts have consistently held that a substantial change in circumstances is "one that was not contemplated at the time the original order of support was entered." In re Marriage of Scanlon, 109 Wn. App. 167, 173, 34 P.3d 877 (2001). A trial court generally has broad discretion to modify child support when there has been a substantial change in circumstances. In re Marriage of Goodell, 130 Wn. App. 381, 388, 122 P.3d 929 (2005). We review modifications to child support orders for manifest abuse of discretion. In re Marriage of Schumacher, 100 Wn. App. 208, 211, 997 P.2d 399 (2000).

The trial court found the creation of the trust reasonable and necessary based on "all the circumstances of the case, including . . . Ben-Artzi's agreement to this arrangement; the lack of proximity and contact between the parents; and the history of nonpayment of support throughout the pendency of the case." It is undisputed that since entry of the child support order, Ben-Artzi has moved to Israel and owes Hopson almost $700,000.00 in past judgments, including $44,450.00 in back child support. These facts clearly support finding a substantial change in circumstances and modification to the child support order. Thus, even if the trial court modified Ben-Artzi's support obligations, it did not abuse its discretion in doing so in the absence of a motion under CR 60(b).

However, we need not decide this issue. Ben-Artzi does not appeal the creation of the trust, and the appellants lack a proper basis for doing so. While the appellants challenge the trust's creation, they do not claim any authorization from Ben-Artzi to represent him. And, they cite no legal authority allowing a third party

16

creditor of a child support debtor to intervene on appeal of that child support obligation. "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

The appellants argue that they are entitled to a five percent fee, based on the postdecree contract they entered with Ben-Artzi in August 2014. They also argue that they are entitled to $2,500,000 from Ben-Artzi's award share, based on another postdecree contract they entered with him in August 2016. Ben-Artzi entered the 2016 contract after the trial court had restrained him from encumbering the net proceeds of the award. The appellants contend that the trial court improperly modified the dissolution decree without applying CR 60(b) when it imposed the trust for future child support. They argue that they are aggrieved because the trust will interfere with their claims against Ben-Artzi.

The trial court allowed the appellants to intervene below to assert their interest in the litigation costs awarded in the original decree. The order at issue clarified that KWG is owed the three percent fee from the net proceeds of the SEC award. But, the court declined to rule on the appellants' interest in Ben-Artzi's award share. It stated,

> [T]he issue before the Court is how the settlement or the [SEC] funds should be divided between [Ben-Artzi] and Ms. Hopson. I do not intend to rule on Kilgour Williams' entitlement to payment. I don't see that issue as being before the Court at all except insofar [as] they may be entitled under the contractual agreements that were made in this case.

> As to the claim of [$]1.25 million I see that as a claim between Mr. Ben-Artzi and Mr. Kilgour and Mr. Williams and I won't be making a determination on entitlement to those fees.
>
> The only determination I'll be making is as to how the various costs should be divided between Ms. Hopson and Mr. Ben-Artzi.

In a dissolution proceeding, "'the court has practically unlimited power over the property'" in the case, "but only as between the parties." In re Marriage of Soriano, 44 Wn. App. 420, 422, 722 P.2d 132 (1986) (quoting Arneson v. Arneson, 38 Wn.2d 99, 102, 227 P.2d 1016 (1951)). "The dissolution court has no power over the property as to the rights of third parties claiming an interest in the property." Id. The court did not assert authority over the appellant's property. The court properly declined to adjudicate the appellants' postdissolution contractual claims against Ben-Artzi.

At oral argument, the appellants stated that their claims against Ben-Artzi are in litigation in New York. Any claim of conflicting priority of claims to the whistleblower award is premature and not properly before this forum. Therefore, the appellants are not aggrieved by the trial court's order.

Because neither Hopson nor Ben-Artzi—the only parties to the decree and child support order—appealed the order creating the trust, that order is now the law of the case. See Tornetta v. Allstate Ins. Co., 94 Wn. App. 803, 809, 973 P.2d 8 (1999) ("A final order from which no appeal is taken becomes the law of the case."). The appellants lack a proper legal basis to challenge the trust's creation. And, their argument that a motion under CR 60(b) was required is frivolous.

18

## II.    Federal Sovereign Immunity Was Not Violated

The appellants argue second that the trial court violated sovereign immunity by requesting that the SEC forward payment to Hopson as trustee of the support and education trust.  They contend that "[t]he federal government's sovereign immunity deprives courts of jurisdiction to direct the disposition of assets in the Treasury of the United States."

"An action seeking specific relief against a federal official, acting within the scope of his delegated authority, is an action against the United States, subject to the governmental privilege of sovereign immunity." State v. Vance, 184 Wn. App. 902, 916, 339 P.3d 245 (2014).  A suit against the United States is defined broadly as "any action seeking a judgment that would: 1) 'expend itself on the public treasury or domain;' 2) 'interfere with the public administration;' or 3) 'restrain the Government from acting' or 'compel it to act.'" Fed. Bureau of Investigation v. Super. Ct., 507 F. Supp. 2d 1082, 1094 (N.D. Cal. 2007) (quoting Washington v. Udall, 417 F.2d 1310, 1315 (9th Cir. 1969)).  Whether the trial court violated sovereign immunity is a question of law that this court reviews de novo. See Cost Mgmt. Servs., Inc. v. City of Lakewood, 178 Wn.2d 635, 641, 310 P.3d 804 (2013) ("We review questions of law de novo.").

Quoting 15 U.S.C. § 78u-6(g)(1)-(2)(A), the appellants assert that the trial court violated sovereign immunity because the "Investor Protection Fund, from which the SEC pays whistleblower awards, 'is established in the Treasury of the United States.'" But, the trial court did not compel or direct the SEC to forward payments to the court registry.  Instead, it "requested" that the SEC forward

19

Hopson the amount to be placed in the trust. The appellants do not dispute this. Nor do they cite authority to support that such a request, rather than a direction, violates sovereign immunity. Accordingly, the trial court did not violate the federal government's sovereign immunity. The appellants' argument that it did is frivolous.

III.  Attorney Fees

A. Appellants

Hopson first argues that because the appellants' sovereign immunity argument is frivolous, they should be sanctioned with an award of fees under RAP 18.9(a). She also requests "interest on the withheld child support trust fund, payable from sums otherwise allocated to [the appellants]," under RAP 18.9(a). In addition to the appellants' making a frivolous argument, she asserts that their appeal was undertaken for the purpose of delay.

> Under RAP 18.9(a), this court may
>
> order a party, . . . who uses these rules for the purpose of delay, files a frivolous appeal, or fails to comply with these rules to pay terms or compensatory damages to any other party who has been harmed by the delay or the failure to comply or to pay sanctions to this court.

An appeal is frivolous when, "considering the entire record, the court is convinced that the appeal presents no debatable issues upon which reasonable minds might differ," and "the appeal is so devoid of merit that there is no possibility of reversal." Advocates for Responsible Dev. v. W. Wash. Growth Mgmt. Hearings Bd., 170 Wn.2d 577, 580, 245 P.3d 764 (2010)  Raising at least one debatable issue precludes a finding that the entire appeal is frivolous. Id. at 580-81. The appeal

here is frivolous. Accordingly, we award Hopson attorney fees under RAP 18.9(a), subject to her compliance with RAP 18.1.

Hopson requests compensatory damages in the form of interest on the support and education trust predicated on the delay caused by this appeal. But, her request is premature because of the appeal, pending concurrently with this case, in the United States Court of Appeals for the Second Circuit to set aside the SEC's denial of Kilgour's and Williams's whistleblower award applications. That appeal has since been denied. Kilgour v. Sec. and Exch. Comm'n, ___ F.3d ___, 2019 WL 5849495, at *10 (2nd Cir. Nov. 8, 2019). However, nothing in the record before us established that the award was available for disbursement, but for the appeal in this case. And, the court in the New York action may determine that the appellants' postdecree contracts with Ben-Artzi are valid. In that case, there will likely be another action to determine the priority of claims on the award. Without knowing the resolution of those claims, evidence that Hopson was damaged by the appellants' alleged delay in this case is lacking. Thus, the claim is not ripe for resolution. Should evidence in support of that claim become available, it is a claim properly initiated in the trial court. As a result, we deny Hopson's request for compensatory damages under RAP 18.9(a), without prejudice.

B. Ben-Artzi

Hopson also requests attorney fees under RAP 18.1. Although Ben-Artzi is not a party on appeal, she requests that he pay the fees from his share of the whistleblower award. She cites a hold harmless provision in the dissolution decree.

RAP 18.1(a) allows this court to award reasonable attorney fees if applicable law grants a party the right to recover such fees. Under RCW 26.09.140, "the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs." And, the decree's hold harmless provision states, "Each party shall hold the other party harmless from any collection action relating to separate or community liabilities set forth above, including reasonable attorney fees and costs incurred in defending against any attempts to collect an obligation of the other party."

To support her request for fees, Hopson contends that Ben-Artzi's "post-decree scheming and agreements with [the appellants], intended to limit [her] share of the SEC proceeds and evade his child support obligations, have caused this litigation as surely as though he were prosecuting these claims for [the appellants]." But, Ben-Artzi did not appeal the order creating the trust. And, even if his actions created competing claims for the SEC award, Hopson's actions also invited the appellants to intervene in this case.

In her first motion requesting that the SEC deposit funds into the court registry for disbursement, Hopson failed to account for KWG's three percent fee under the 2013 agreement. She accounted only for Labaton's 18 percent fee, asking the trial court to direct "the SEC to deposit the SEC award, less 18%, to the Whatcom County Superior Court registry." In response to her motion, the appellants intervened to assert their interest in the gross proceeds of the award.

Under the decree, expert fees in the SEC action are to be deducted from the award before calculating the net proceeds due to Hopson and Ben-Artzi.

A determination of breach of the terms of the decree is a factual issue properly raised in the trial court. Hopson did not seek attorney fees below based on a breach of the decree's hold harmless provision. Accordingly, we decline to award Hopson attorney fees against Ben-Artzi.

We affirm and award Hopson attorney fees under RAP 18.9(a), against the appellants, subject to her compliance with RAP 18.1.

_Appelwick, CJ_

WE CONCUR: